**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**LAFAYETTE DIVISION**

| | |
|---|---|
| **SCOTTSDALE INSURANCE COMPANY,** | **CIVIL ACTION NO.** |
| *Plaintiff* | |
| **VERSUS** | **JUDGE:** |
| **MT. HAWLEY INSURANCE COMPANY AND ENTERGY TECHNOLOGY MANUFACTURING & THREADING, LLC,** | **MAGISTRATE JUDGE:** |
| *Defendants* | |

## COMPLAINT FOR DECLARATORY JUDGMENT

NOW INTO COURT, comes Scottsdale Insurance Company ("Scottsdale"), by and through its undersigned counsel, and pursuant to 28 U.S.C. §§ 2201-2202 and Federal Rule of Civil Procedure 57, hereby seeks Declaratory Judgment against Defendants, Mt. Hawley Insurance Company ("Mt. Hawley") and Energy Technology Manufacturing & Threading, LLC ("ETMT") (together, "Defendants") for purposes of determining questions of actual, immediate controversy between the rights and obligations of the parties in connection with a lawsuit styled *Premience Energy, LLC v. Dufrene Pipe Company, Inc.*, case no. C-94-19, pending in the 31st Judicial District Court for Jefferson Davis Parish, Louisiana (the "Underlying Lawsuit").[1] Upon information and belief, Scottsdale respectfully alleges as follows:

---

[1]    A copy of Premience's Petition for Breach of Contract, Breach of Express and Implied Warranties, and Negligence and First Amended and Restated Petition for Breach of Contract, Breach of Express and Implied Warranties, and Negligence are attached hereto together as Exhibit "A."

## PARTIES

1.      At all  pertinent times, Scottsdale  was,  and still  is, a corporation organized and existing under the laws of Ohio with its principal place of business in Arizona.

2.      At all pertinent times, Mt. Hawley was, and still is, a corporation organized and existing under the laws of Illinois with its principal place of business in Texas. Mt. Hawley may be served with process through the Louisiana Secretary of State at 8585 Archives Avenue, Baton Rouge, Louisiana 70809.

3.      At all pertinent times, ETMT was, and still is, a Louisiana limited liability company whose members are citizens of Louisiana, and whose principal place of business is in Lafayette, Louisiana. ETMT may be served with process through its registered agent, Kaliste Saloom, at 3639 Ambassador Caffery Parkway, Lafayette, Louisiana 70503.

## JURISDICTION AND VENUE

4.      There is complete diversity of citizenship between Scottsdale, a citizen of Ohio and Arizona; Mt. Hawley, a citizen of Illinois and Texas; and ETMT, a citizen of Lafayette Parish, Louisiana.

5.      The amount in controversy exceeds $75,000.

6.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1332 and 2201.

7.      ETMT and Mt. Hawley are subject to the personal jurisdiction of this Court.

8.      Venue is proper in the Lafayette Division of the Western District of Louisiana, where Defendant ETMT resides.[2]

---

[2]    *See* 28 U.S.C. § 1391(b).

PD.41092861.1

## NATURE OF THE CLAIM

9.      Scottsdale seeks a declaratory judgment that Policy No. ENS0002756, issued by Scottsdale to ETMT for the period January 18, 2018 to January 18, 2019 ("Scottsdale Policy"), provides primary coverage only for any *non-professional liability* asserted or assessed in the Underlying Lawsuit.[3]   Scottsdale further seeks a declaratory judgment that Policy No. NRG0000429 ("Mt. Hawley Policy"), issued by Mt. Hawley to ETMT for the period January 18, 2020 to January 18, 2021, provides primary coverage for any *professional liability* asserted or assessed in the Underlying Lawsuit.[4]

10.      Scottsdale seeks a declaration that the Mt. Hawley Policy is *not* excess to the Scottsdale Policy and, instead, that both policies provide primary coverage, albeit for differing risks and liabilities (i.e., non-professional CGL risks versus professional risks).

11.      Scottsdale further seeks a declaratory judgment that Mt. Hawley must reimburse Scottsdale for one-half of all fees and costs that Scottsdale has incurred or will incur for the defense of ETMT in the Underlying Lawsuit on the basis that the Mt. Hawley Policy and Scottsdale Policy provide co-primary coverage under which each carrier owes an independent defense obligation to ETMT with respect to the claims in the Underlying Lawsuit.

## FACTUAL BACKGROUND

**The Underlying Lawsuit**

12.      Plaintiff, Premience Energy, LLC ("Premience"), filed the Underlying Lawsuit against Dufrene on February 11, 2019, seeking damages arising from its use of allegedly

---

[3]      A copy of the Scottsdale Policy is attached hereto as Exhibit "B."
[4]      A copy of the Mt. Hawley Policy is attached hereto as Exhibit "C."

PD.41092861.1

incorrect casing pipe during the drilling of the completion zone of JV Miller No. 2 Well, Serial No. 251179 (the "Well"), in Jefferson Davis Parish, Louisiana.[5]

13.     In its First Amended and Restated Petition for Breach of Contract, Breach of Express and Implied Warranties, and Negligence ("First Amended Petition"), Premience named Dufrene Pipe Company, Inc. ("Dufrene"); IOS/PCI, LLC ("IOS"); and ETMT as defendants.[6]

14.     Premience alleges that in August 2018, it entered into an agreement with Dufrene under which Dufrene agreed to supply approximately 9,700 feet of N-80 grade casing pipe with specifications necessary to withstand the high formation pressure of the Well's completion zone.[7]

15.     Premience claims that Dufrene represented that the casing would be reconditioned and undergo hydrostatic testing, drift testing, and electromagnetic inspections in compliance with applicable American Petroleum Institute specifications.[8]

16.     Premience alleges that Dufrene "retained ETMT to inspect the threads on the casing, re-thread the casing where appropriate, perform hydrostatic testing, conduct a full-length drift on each joint of casing and to inspect the wall of the casing for acceptable thickness and appropriate grade."[9]

17.     Premience contends that ETMT failed to provide professional services by properly grading and inspecting the wall of more than thirty joints of the casing before delivering

---

[5]     *See generally* Ex. A, Premience's Pet.
[6]     *See* Ex. A, Premience's First Am. Pet., ¶2.
[7]     *See* Ex. A, Premience's First Am. Pet., ¶¶5-6, 8.
[8]     *See* Ex. A, Premience's First Am. Pet., ¶7.
[9]     *See* Ex. A, Premience's First Am. Pet., ¶ 11.

the casing to IOS for further inspection, grading, color-coding, and banding pursuant to Dufrene's instructions.[10]

18.    Premience claims that after IOS completed its services, the casing was delivered to Dufrene's pipe yard for sale or rental to exploration companies, including Premience.[11]

19.    Premience alleges that on or about September 26, 2018, it began to run the casing supplied by Dufrene, and inspected and tested by ETMT and IOS, into the Well's completion zone, but the casing string stopped moving downhole, and the casing parted when the rig attempted to pick up the casing string.[12]

20.    Premience claims that the parted casing caused Well operations to stop, and a third party's ultrasonic testing on the casing string identified thirty-four joints of casing with collapse pressure strength below the N-80 grade that Dufrene agreed to provide.[13]

21.    Premience seeks damages from Dufrene, IOS, and ETMT arising out of the use of allegedly deficient casing pipe, including money spent mitigating damage caused by the casing, third party expenses, and additional costs to be incurred for future development of the Well.[14]

22.    Plaintiff asserts a negligence claim against ETMT, contending that ETMT breached its duty "to use reasonable care in the performance of the inspection and grading services it undertook or was expected to undertake" on the casing pipe supplied by Dufrene to Premience.[15]

---

[10]    *See* Ex. A, Premience's First Am. Pet., ¶¶12-13.
[11]    *See* Ex. A, Premience's First Am. Pet., ¶16.
[12]    *See* Ex. A, Premience's First Am. Pet., ¶17.
[13]    *See* Ex. A, Premience's First Am. Pet., ¶¶18-19.
[14]    *See* Ex. A, Premience's First Am. Pet., ¶20.
[15]    *See* Ex. A, Premience's First Am. Pet., ¶35.

PD.41092861.1

23.     Specifically, Plaintiff claims that ETMT breached its duty to Premience by negligently inspecting the casing pipe; negligently testing the casing pipe; negligently delivering "the casing pipe to IOS for ultimate delivery to Dufrene, in that [ETMT] intermixed different grades of casing pipe together and did not inform IOS or Premience of the situation;" and negligently representing "that the casing pipe had a higher quality, weight, and collapse pressure than it did."[16]

24.     In December 2020, Dufrene filed its Cross-Claims in the Underlying Lawsuit asserting breach of contract and negligence claims against ETMT and IOS for their alleged failure to properly inspect, test, and label the subject casing.[17]

25.     In its Cross-Claims, Dufrene seeks "all sums that may be alleged against Dufrene by [Premience], plus costs and attorney's fees."[18]

26.     ETMT reported the claim to Scottsdale on April 14, 2020.  In a May 21, 2020 letter to ETMT, Scottsdale acknowledged receipt of the lawsuit and agreed to defend ETMT against the claims in the Underlying Lawsuit under the Scottsdale Policy's Commercial General Liability coverage part, subject to a reservation of rights.[19] In the May 21, 2020 letter, Scottsdale denied coverage under the Professional Liability coverage part given that the claim was not first made and reported during the policy period.[20]

27.     In a letter dated June 4, 2020, Mt. Hawley acknowledged receipt of the claim and denied coverage under the Mt. Hawley Policy's Commercial General Liability coverage part

---

[16]    *See* Ex. A, Premience's First Am. Pet., ¶36.
[17]    *See generally* Dufrene's Cross-Claims, a copy of which is attached hereto as Exhibit "D."
[18]    *See* Ex. D, Dufrene's Cross-Claims, at p. 7.
[19]    *See* May 21, 2020 letter from Nationwide to ETMT, a copy of which is attached hereto as Exhibit "E."
[20]    *See* Ex. E, May 21, 2020 letter from Nationwide to ETMT, at pp. 17-22.

because the events at issue occurred before the inception of the Mt. Hawley Policy.[21]   In addition, Mt. Hawley reserved rights under the Mt. Hawley Policy's Professional Liability coverage part, but took the incorrect position that its coverage is excess over the Scottsdale Policy's coverage based on inapplicable Other Insurance provisions.[22]

28.    By letter dated February 2, 2023, Scottsdale, through undersigned counsel, explained to Mt. Hawley why its excess coverage position is incorrect and demanded that Mt. Hawley (1) acknowledge its primary obligations under its Professional Liability Coverage and (2) agree to participate in the defense of ETMT on a co-primary basis and pay one-half of defense costs incurred by Scottsdale to date in defending ETMT in the Underlying Lawsuit.[23]

29.    On February 7, 2023, Mt. Hawley's counsel issued a response letter to Scottsdale's February 2, 2023 correspondence, yet again taking the incorrect position that it provides excess coverage and continuing to evade its independent defense obligations under the Mt. Hawley Policy.[24]

30.    The trial of the Underlying Lawsuit is set for February 13, 2023.

**The Scottsdale Policy**

31.    The Scottsdale Policy, issued for the policy period January 18, 2018 to January 18, 2019, provides coverage to Named Insureds thereunder, including ETMT, subject to certain terms, conditions, limitations, and exclusions.[25]

---

[21]   *See* June 4, 2020 letter from Mt. Hawley to ETMT, at pp. 1-3, a copy of which is attached hereto as Exhibit "F."

[22]   *See* Ex. F, June 4, 2020 letter from Mt. Hawley to ETMT, at pp. 4-6.

[23]   *See* February 2, 2023 letter from Jay Sever to Mt. Hawley, a copy of which is attached hereto as Exhibit "G."

[24]   *See* February 7, 2023 letter from Alan D. Ezkovich to Jay Sever, a copy of which is attached hereto as Exhibit "H."

[25]   *See generally* Ex. B, Scottsdale Policy.

32.     The Scottsdale Policy includes Commercial General Liability – Occurrence and Professional Liability – Claims Made coverage parts.[26]

33.     The Scottsdale Policy's Commercial General Liability and Professional Liability coverage parts state that "[t]hroughout this policy the words 'you' and 'your' refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this Policy" and "[t]he word 'insured' means any person or organization qualifying as such under Section II – Who Is An Insured."[27]

34.     The Insuring Agreement of the Scottsdale Policy's Commercial General Liability coverage part states, in relevant part:

> **a.**  We will pay those sums that the insured becomes legally obligated to pay as damages because of … "property damage" to which this insurance applies.  We will have the right and duty to defend the insured against any "suit" seeking those damages.
>
> \* \* \*
>
> **b.**  This insurance applies to … "property damage" only if:
>
> **(1)** The … "property damage" is caused by an "occurrence" …;
>
> **(2)** The … "property damage" occurs during the policy period.[28]

35.     The Scottsdale Policy's Commercial General Liability coverage is subject to the Exclusion – Engineers, Architects or Surveyors Professional Liability Endorsement which provides that "[t]his insurance does not apply to … 'property damage' … arising out of the

---

[26]  *See* Ex. B, Scottsdale Policy, at Form ENS-D-1 (5-15) Policy Declarations, Page 2 of 2.
[27]  *See* Ex. B, Scottsdale Policy, at Form CG 00 01 04 13 Commercial General Liability Coverage Form, Page 1 of 16; ENS-P-2 (6-17) Professional Liability Coverage Form, Page 1 of 15.
[28]  *See* Ex. B, Scottsdale Policy, at Form CG 00 01 04 13 Commercial General Liability Coverage Form, Page 1 of 16.

rendering of or failure to render any professional services by you or any engineer, architect or surveyor who is either employed by you or performing work on your behalf in such capacity." The Endorsement states that "[p]rofessional services include: 1. [t]he preparing, approving or failing to prepare or approve maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; and 2. [s]upervisory, inspection, architectural or engineer activities."[29]

36.    The Scottsdale Policy's Commercial General Liability coverage part defines "occurrence" to mean "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." "Property damage" means:

> **a.**  Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or
>
> **b.**  Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.[30]

37.    The Scottsdale Policy includes the following Other Insurance provision in its Commercial General Liability coverage part:

> If other valid and collectible insurance is available to the insured for a loss we cover under Coverages **A** or **B** of this Coverage Part, our obligations are limited as follows:
>
> **a.  Primary Insurance**
>
> This insurance is primary except when Paragraph **b.** below applies.  If this insurance is primary, our obligations are not affected unless any of the other insurance is also

---

[29]    *See* Ex. B, Scottsdale Policy, at Form CG 22 43 04 13 Exclusion – Engineers, Architects Or Surveyors Professional Liability Endorsement, Page 1 of 1.

[30]    *See* Ex. B, Scottsdale Policy, at Form CG 00 01 04 13 Commercial General Liability Coverage Form, Page 15 of 16.

primary.  Then we will share with all that other insurance by the method described in Paragraph **c.** below.

**b.  Excess Insurance**

**(1)** This insurance is excess over:

**(a)** Any of the other insurance, whether primary, excess, contingent or on any other basis:

**(i)** That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for 'your work';

**(ii)** That is Fire Insurance for premises rented to you or temporarily occupied by you with permission of the owner;

**(iii)** That is insurance purchased by you to cover your liability as a tenant for 'property damage' to premises rented to you or temporarily occupied by you with permission of the owner; or

**(iv)** If the loss arises out of the maintenance or use of aircraft, 'autos' or watercraft to the extent not subject to Exclusion **g.** of Section **I** – Coverage **A** – Bodily Injury and Property Damage Liability.

**(b)** Any other primary insurance available to you covering liability for damages arising out of the premises or operations, or the products and completed operations for which you have been added as an additional insured.

\* \* \*

**c.  Method Of Sharing**

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method,

PD.41092861.1

each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.[31]

38.    The Insuring Agreement of the Scottsdale Policy's Professional Liability coverage part states, in relevant part:

a.    We will pay those sums that the "insured" becomes legally obligated to pay as "damages" resulting from a "wrongful act" for any "claim" first made during the "policy period." We will have the right and duty to defend the "insured" against any "suit" seeking those "damages." However, we will have no duty to defend the "insured" against any "suit" seeking "damages" to which this insurance does not apply.

* * *

b.    This insurance applies to a "wrongful act," only if:

* * *

(2)    The "wrongful act" must commence on or after the Retroactive Date, if any, shown in the Declarations, and prior to the end of the "policy period";

(3)    A "claim" against any "insured" for "damages" because of the "wrongful act" is first made against any "insured" during the "policy period" or any Extended Reporting Period we provide under **SECTION V—EXTENDED REPORTING PERIODS,** in accordance with paragraph **e.** below.

* * *

d.    Such "claim," after being received by any "insured," is reported to us in accordance with the provisions of **SECTION IV—CONDITIONS, 2.** Duties In The Event Of A Claim Or Suit.[32]

---

[31]    *See* Ex. B, Scottsdale Policy, at Form CG 00 01 04 13 Commercial General Liability Coverage Form, Page 12 of 16.

[32]    *See* Ex. B, Scottsdale Policy, at Form ENS-P-2 (6-17) Professional Liability Coverage Form, Pages 1-2 of 15.

39.     Section V—Extended Reporting Periods of the Scottsdale Policy's Professional

Liability coverage part provides:

> 1.  If this policy is canceled or non-renewed by either the Company or the Named Insured for any reason, except for nonpayment of premiums or deductibles, the following shall apply:
>
>     (a) Upon termination or expiration of the policy the Company will provide the "insured" an automatic three month extension period for any "claim" first made against the "insured" and reported in writing to the Company, but only in respect to a "claim" for a "wrongful act" that take place on or after the retroactive date as shown in the Declarations and before the date of such cancellation or expiration. This automatic extended reporting period shall become effective the termination date of the policy.
>
>     (b) This automatic extended reporting period does not reinstate, increase or in any way create any new Limits of Insurance, nor does it extend the "policy period."
>
>     (c) The automatic extended reporting period is provided without an additional charge. The Automatic Extended Reporting Period allows the Named Insured to report any "claim" first made against the "insured" during the three month extension period immediately following the cancellation or non-renewal but only with respect to a "claim" for a "wrongful act" that take place on or after the Retroactive Date, provided that the "claim" is reported to us as soon as practicable but in any event no later than thirty (30) days after the expiration of the automatic extended reporting period.[33]

40.     The Scottsdale Policy's Professional Liability coverage part defines "claim" to

mean "[a] written demand RECEIVED BY THE INSURED for monetary 'damages'; … [a] civil

proceeding commenced by the service of a complaint or similar pleading … against any

'insured' for any 'wrongful act.'"  "'Damages' means any amount that you are legally required

---

[33]     *See* Ex. B, Scottsdale Policy, at Form ENS-P-2 (6-17) Professional Liability Coverage Form, [ ] of 15.

to pay in the form of a judgment, award or settlement." "'Professional services' means those functions performed for third parties and for a fee by you or on your behalf that are related to your practice as a consultant, engineer, architect, surveyor, laboratory or construction manager." "'Suit' means a civil proceeding in which 'damages' because of 'bodily injury' or 'property damage' to which this insurance applies are alleged." "'Wrongful act' means any actual or alleged act, error or omission committed or allegedly committed by an 'insured' which arises out of the rendering of or failure to render 'professional services' and which resulted in actual or alleged 'damages.'"[34]

41.     The Scottsdale Policy's Professional Liability coverage part contains a Limitation Of Coverage To Designated Professional Services Endorsement, which states "[t]his insurance only applies to any 'claim' that results from the rendering of or failure to render Professional Services shown in the Schedule." The Schedule included in this Endorsement provides:

> Description of Professional Services:
>
> Non-destructive and ultrasonic testing services for a third party for a fee.[35]

42.     The Other Insurance provision of the Professional Liability coverage part of the Scottsdale Policy states:

> If other valid and collectible insurance is available to the 'insured' for a loss we cover under Any Coverage Part, our obligations are limited as follows:
>
> **a.**  Primary Insurance

---

[34]  *See* Ex. B, Scottsdale Policy, at Form ENS-P-2 (6-17) Professional Liability Coverage Form, Pages 12-15 of 15.

[35]  *See* Scottsdale Policy, at Form ENS-26 (5-15) Limitation Of Coverage To Designated Professional Services Endorsement, Page 1 of 1.

This insurance is primary except when paragraph **b.** below applies. When this insurance is primary, our obligations are not affected unless any of the other is also primary. Then, we will share with all that other insurance by the method described in paragraph **c.** below.

**b.** Excess Insurance

This Insurance is excess over any of the other insurance, whether primary, excess, contingent or on any other basis:

**(1)** That is effective prior to the beginning of the 'policy period' shown in the Declarations of this insurance and applies to a 'wrongful act' or any acts, errors or omissions other than a claims made basis, if:

    **(a)** No retroactive date is shown in the Declarations of this insurance; or

    **(b)** The limits of insurance apply to a 'policy period' which continues after the Retroactive Date shown in the Declarations of this insurance.

**(2)** Any valid and collectible insurance available to you covering liability for 'damages' arising out of your premises, operations, products and/or completed operations;

**(3)** Any valid and collectible insurance available to you covering liability for 'damages' arising out of your premises, operations, products and/or completed operations for which you have been added as an additional insured by endorsement, by definition in a contract or agreement, or by combination thereof;

**(4)** Any loss that arises out of the maintenance or use of aircraft, 'auto' or watercraft to the extent not subject to Exclusion **g.** of the Professional Liability Coverage Part; or

**(5)** Any valid and collectible insurance available to you covering liability for 'damages' for which you have been added as an additional insured by an endorsement, by definition in a contract or agreement, or by a combination thereof.

14

\* \* \*

### c.  Method Of Sharing

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.[36]

### The Mt. Hawley Policy

43.    The Mt. Hawley Policy, issued for the policy period January 18, 2020 to January 18, 2021, provides coverage to Named Insureds thereunder, including ETMT, subject to certain terms, conditions, limitations, and exclusions.[37]

44.    The Mt. Hawley Policy includes Commercial General Liability – Occurrence and Professional Liability – Claims Made coverage parts.[38]

45.    The Mt. Hawley Policy's Commercial General Liability and Professional Liability coverage parts state that "[t]hroughout this policy the words 'you' and 'your' refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this Policy" and "[t]he word 'insured' means any person or organization qualifying as such under Section II – Who Is An Insured."[39]

---

[36]    *See* Ex. B, Scottsdale Policy, at Form CG 00 01 04 13 Commercial General Liability Coverage Form, Page 12 of 16.

[37]    *See generally* Ex. C, Mt. Hawley Policy.

[38]    *See* Ex. C, Mt. Hawley Policy, at Form NCP 100 (02/16) Common Policy Declarations, Page 1 of 1.

[39]    *See* Ex. C, Mt. Hawley Policy, at Form CG 00 01 04 13 Commercial General Liability Coverage

46.     The Insuring Agreement of the Mt. Hawley Policy's Commercial General Liability coverage part states, in relevant part:

> **a.**  We will pay those sums that the insured becomes legally obligated to pay as damages because of … "property damage" to which this insurance applies.  We will have the right and duty to defend the insured against any "suit" seeking those damages.
>
> \* \* \*
>
> **b.**  This insurance applies to … "property damage" only if:
>
> **(1)** The … "property damage" is caused by an "occurrence" …;
>
> **(2)** The … "property damage" occurs during the policy period.[40]

47.     The Mt. Hawley Policy's Commercial General Liability coverage part defines "occurrence" to mean "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." "Property damage" means:

> **a.**  Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or
>
> **b.**  Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.[41]

48.     The Mt. Hawley Policy includes the following Other Insurance provision in its Commercial General Liability Part:

---

Form, Page 1 of 16; NCP 101 (03/19) Professional Liability Policy, Pages 1 of 16.

[40]  *See* Ex. C, Mt. Hawley Policy, at Form CG 00 01 04 13 Commercial General Liability Coverage Form, Page 1 of 16.

[41]  *See* Ex. C, Mt. Hawley Policy, at Form CG 00 01 04 13 Commercial General Liability Coverage Form, Page 15 of 16.

16

If other valid and collectible insurance is available to the insured for a loss we cover under Coverages **A** or **B** of this Coverage Part, out obligations are limited as follows:

**a.  Primary Insurance**

This insurance is primary except when Paragraph **b.** below applies.  If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary.  Then we will shar with all that other insurance by the method described in Paragraph **c.** below.

**b.  Excess Insurance**

**(1)** This insurance is excess over:

**(a)** Any of the other insurance, whether primary, excess, contingent or on any other basis:

**(i)**   That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for 'your work';

**(ii)**   That is Fire Insurance for premises rented to you or temporarily occupied by you with permission of the owner;

**(iii)**   That is insurance purchased by you to cover your liability as a tenant for 'property damage' to premises rented to your or temporarily occupied by you with permission of the owner; or

**(iv)**   If the loss arises out of the maintenance or use of aircraft, 'autos' or watercraft to the extent not subject to Exclusion **g.** of Section **I** – Coverage **A** – Bodily Injury and Property Damage Liability.

**(b)** Any other primary insurance available to you covering liability for damages arising out of the premises or operations, or the products and completed operations for which you have been added as an additional insured.

\* \* \*

17

### c.  Method Of Sharing

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.[42]

49.    The Insuring Agreement of the Mt. Hawley Policy's Professional Liability coverage part states, in relevant part:

**a.**  We will pay those sums that the insured becomes legally obligated to pay as "damages" that result from an actual or alleged act, error or omission in the performance of "professional services" by the insured … to which this insurance applies.  We will have the right and duty to defend the insured against any "suit" seeking those "damages".

\* \* \*

**b.**  This insurance shall only apply if:

**(1)** The "claim" is first made against the insured during the "policy period" and first reported to the insurer, in writing, during the "policy period", or Extended Reporting Period, if applicable;

\* \* \*

**(3)** The actual or alleged act, error or omission takes place on or after the "retroactive date", shown in the Declarations and before the end of the "policy period".

**c.**  All "claims" for "damages" that result from or arise out of a single act, error or omission or a services of related acts, errors

---

[42]  *See* Ex. C, Mt. Hawley Policy, at Form CG 00 01 04 13 Commercial General Liability Coverage Form, Page 12 of 16.

PD.41092861.1

or omissions in the performance of "professional services" by
the insured, will be deemed to have been made and reported at
the time the first of those "claims" is made against any insured.
All such "claims" for "damages" shall be subject to the limit of
insurance stated in the Declarations of the Policy which applies
to such earliest "claim".[43]

50.     The Mt. Hawley Policy' Professional Liability coverage part defines "claim" to

mean "a demand received by the insured for money or services that arises from an act, error or

omission to which this insurance applies," and "includes but is not limited to 'suits', petitions,

arbitrations or other alternative dispute resolution requests filed against the insured." "Damages"

"means a monitory judgment, award or settlement of compensatory damages including

'damages' because of an actual or alleged act, error or omission in the performance of

'professional services.'" "Professional services" "means those services the Insured is legally

qualified to perform for others for a fee in the practice of architecture, engineering or surveying"

and "may also include those 'professional services' as limited or amended by an attached

schedule." The Mt. Hawley Policy's Limitation Of Coverage To Designated Professional

Services Endorsement modifies the Professional Liability Coverage Part to only apply to

"'claims' or 'suits' that arise out of your 'professional services' of [non destructive testing of

piping, metal parts and tools] by you or on your behalf." "Retroactive date" means "the date set

forth in the Declarations [January 8, 2014] … and is the earliest date that a 'claim' can be made

for coverage to be provided under this Policy." "Suit" means "a civil proceeding in which

---

[43]     *See* Ex. C, Mt. Hawley Policy, at Form NCP 101 (03/19) Professional Liability Policy, Pages 1-2 of
16.

'damages' that result from an act, error or omission in the performance of 'professional services' to which this insurance applies are alleged."[44]

51.    The Other Insurance provision of the Professional Liability coverage part of the Mt. Hawley Policy states:

> If other valid and collectible insurance is available to the insured for 'damages' we cover under this Policy other than a policy that is specifically written to apply in excess of this Policy, the insurance afforded by this Policy shall apply in excess of and shall not contribute with such other policy.  This Policy shall be excess of any deductible or self-insured retention under such other insurance.[45]

## COUNT I – DECLARATORY RELIEF

### Scottsdale's Policy is Limited to *Non-Professional* CGL Coverage and Mt. Hawley's Policy is Limited to *Professional* Coverage

52.    Scottsdale adopts and incorporates by reference the allegations set forth in the preceding paragraphs above as though completely and fully set forth herein.

53.    An actual, present, and existing controversy exists among the parties to this lawsuit regarding the coverage afforded under the Scottsdale Policy and Mt. Hawley Policy for the claims in the Underlying Lawsuit.

54.    The allegations in the Underlying Lawsuit may only trigger the Scottsdale Policy's Commercial General Liability coverage part to the extent Premience asserts that ETMT is liable for covered damages due to "property damage" that occurred during the policy period.

---

[44]    *See* Ex. C, Mt. Hawley Policy, at Form NCP 100 (02/16) Common Policy Declarations, Pages 13, 15 of 16; Form NCP 307 (04/16) Limitation Of Coverage To Designated Professional Services Endorsement, at Page 1 of 1.

[45]    *See* Ex. C, Mt. Hawley Policy, at Form NCP 101 (03/19) Professional Liability Policy, Page 11 of 16.

55.     The majority of allegations against ETMT in the Underlying Lawsuit arise from its alleged failure to render professional services related to inspecting and testing the subject casing pipe. These claims are barred under the Scottsdale Policy's Commercial General Liability coverage part pursuant to the Exclusion – Engineers, Architects or Surveyors Professional Liability Endorsement, precludes coverage for "'property damage' … arising out of the rendering of or failure to render any professional services," specifically including inspection services.

56.     The Scottsdale Policy's Professional Liability coverage part does not provide coverage for ETMT's alleged professional liability in the Underlying Lawsuit. This claim was first made against ETMT when the First Amended Petition was filed on March 31, 2020, and the matter was reported to Scottsdale on April 14, 2020. These dates are both after the policy period and, therefore, the claims made and reporting requirements of the Scottsdale Policy's Professional Liability coverage part cannot be satisfied.

57.     Thus, the Scottsdale Policy may only provide coverage for the Underlying Lawsuit under the Commercial General Liability coverage part and coverage afforded thereunder is limited to the claims that are not related to ETMT's professional services.

58.     As Mt. Hawley has acknowledged, the Mt. Hawley Policy's Professional Liability coverage part provides coverage for a majority of the claims asserted against ETMT in the Underlying Lawsuit because the claims involve professional liability for a claim that was made and reported during the Mt. Hawley Policy's policy period for "damages" resulting from alleged error in the performance of "professional services" taking place after the January 8, 2014 "retroactive date."

## COUNT II – DECLARATORY RELIEF

**Mt. Hawley's Professional Coverage is Not Excess to Scottsdale's CGL Coverage**

57.    Scottsdale adopts and incorporates by reference the allegations set forth in the preceding paragraphs above as though completely and fully set forth herein.

58.    As established above, the Scottsdale Policy and the Mt. Hawley Policy provide wholly separate coverage under separate coverage parts for the alleged liability and damages in the Underlying Lawsuit.

59.    Because the Scottsdale Policy and Mt. Hawley Policy do not provide insurance coverage for the same risk, one policy cannot be excess of the other.

60.    Inasmuch as Other Insurance provisions only apply to overlapping risks, the Policies Other Insurance provisions are not implicated.

61.    Even if the Other Insurance provisions in the respective Policies were implicated, both Policies' Other Insurance provisions contain equally effective excess insurance clauses. If for some reason, this Court were to find that the Other Insurance provisions were relevant, the provisions would be deemed to be "mutually repugnant" such that both Policies apply on a pro rata basis.

## COUNT III – DECLARATORY AND CONTRIBUTORY RELIEF

**Mt. Hawley Owes Scottsdale Half of All Fees and Costs that it Has Incurred and Will Incur for the Defense of ETMT in the Underlying Lawsuit**

62.    Scottsdale adopts and incorporates by reference the allegations set forth in the preceding paragraphs above as through completely and fully set forth herein.

63.     Scottsdale has incurred all costs and fees associated with defending ETMT, even though the majority of claims in the Underlying Lawsuit arise from professional liability, which Mt. Hawley acknowledges are covered under the Mt. Hawley Policy.

64.     Because the Mt. Hawley Policy provides co-primary coverage under the Professional Liability coverage part, Mt. Hawley independently owes a defense obligation to ETMT with respect to the claims in the Underlying Lawsuit.

65.     For these reasons, Mt. Hawley owes Scottsdale half of all fees and costs that it has incurred and will incur for the defense of ETMT in the Underlying Lawsuit.

66.     In addition to the foregoing provisions, Scottsdale pleads all other conditions, terms, warranties, limitations, definitions, and exclusions of the Scottsdale Policy, which also may be found to be applicable as Scottsdale's investigation of this matter continues, and reserves the right to amend its Complaint as additional and/or more specific information becomes available.

**WHEREFORE**, Scottsdale prays:

A.  That process be issued as required by law and the Defendants be served with copies of the Summons and Complaint for Declaratory Judgment;

B.  For a declaration by the Court declaring the rights and obligations of the parties under the Scottsdale Policy and Mt. Hawley Policy, including, but not limited to, a judgment that the Scottsdale Policy provides primary coverage only for any *non-professional liability* asserted or assessed in the Underlying Lawsuit and the Mt. Hawley Policy provides primary coverage for any *professional liability* asserted or assessed in the Underlying Lawsuit; a judgment that the Mt. Hawley Policy is *not* excess to the Scottsdale Policy

and, instead, that both policies provide primary coverage; and a judgment that Mt. Hawley must reimburse Scottsdale for one-half of all fees and costs that Scottsdale has incurred and will incur for the defense of ETMT in the Underlying Lawsuit;

C.  For all costs and fees that Scottsdale has incurred or will incur for the bringing of this actions; and

D.  For all such other and further relief as this Court deems just and proper.

Respectfully submitted, this 8th day of February, 2023.

**PHELPS DUNBAR LLP**

BY:   */s/ Tucker T. Bohren*
Jay Russell Sever (Bar No. 23935)
Tucker T. Bohren (Bar No. 37039)
Canal Place | 365 Canal Street, Suite 2000
New Orleans, Louisiana 70130-6534
Telephone: 504-566-1311
Telecopier: 504-568-9130
Email: jay.sever@phelps.com
           tucker.bohren@phelps.com

**ATTORNEYS FOR PLAINTIFF, SCOTTSDALE INSURANCE COMPANY**

PD.41092861.1