## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
## LAFAYETTE DIVISION

| | |
|---|---|
| **SCOTTSDALE INSURANCE COMPANY,** | **CIVIL ACTION NO. 6:23-CV-00174** |
| *Plaintiff* | |
| **VERSUS** | **JUDGE: DAVID C. JOSEPH** |
| **MT. HAWLEY INSURANCE COMPANY AND ENERGY TECHNOLOGY MANUFACTURING & THREADING, LLC,** | **MAGISTRATE JUDGE: DAVID J. AYO** |
| *Defendants* | |

### FIRST AMENDED COMPLAINT FOR DECLARATORY JUDGMENT

NOW INTO COURT, comes Scottsdale Insurance Company ("Scottsdale"), by and through its undersigned counsel, and pursuant to 28 U.S.C. §§ 2201-2202 and Federal Rule of Civil Procedure 57, hereby files this First Amended Complaint for Declaratory Judgment[1] seeking Declaratory Judgment against Defendants, Mt. Hawley Insurance Company ("Mt. Hawley"); Energy Technology Manufacturing & Threading, LLC ("ETMT"); and Premience Energy, LLC ("Premience") (collectively, "Defendants") for purposes of determining questions of actual, immediate controversy between the rights and obligations of the parties in connection with the lawsuit styled *Premience Energy, LLC v. Dufrene Pipe Company, Inc.*, case no. C-94-19, pending

---

[1] Scottsdale files this amended pleading less than 21 days after service of the Complaint for Declaratory Judgment (R. Doc. 1) filed on February 8, 2022; thus, leave of court is not required. *See* Fed. R. Civ. Proc. 15(a)(1).

in the 31st Judicial District Court for Jefferson Davis Parish, Louisiana (the "Underlying Lawsuit").[2] Upon information and belief, Scottsdale respectfully alleges as follows:

**PARTIES**

1.    At all pertinent times, Scottsdale was, and still is, a corporation organized and existing under the laws of Ohio with its principal place of business in Arizona.

2.    At all pertinent times, Mt. Hawley was, and still is, a corporation organized and existing under the laws of Illinois with its principal place of business in Texas. Mt. Hawley may be served with process through the Louisiana Secretary of State at 8585 Archives Avenue, Baton Rouge, Louisiana 70809.

3.    At all pertinent times, ETMT was, and still is, a Louisiana limited liability company whose members are citizens of Louisiana, and whose principal place of business is in Lafayette, Louisiana. ETMT may be served with process through its registered agent, Kaliste Saloom, at 3639 Ambassador Caffery Parkway, Lafayette, Louisiana 70503.

4.    At all pertinent times, Premience was, and still is, a Delaware limited liability company whose members are citizens of Texas, and whose principal place of business is in Sugar Land, Texas. Premience may be served with process through its registered agent, Attorney Service Associates Inc., at 3610-2 N. Josey Suite 223, Carrollton, Texas 75007.

**JURISDICTION AND VENUE**

5.    There is complete diversity of citizenship between Scottsdale, a citizen of Ohio and Arizona; Mt. Hawley, a citizen of Illinois and Texas; ETMT, a citizen of Lafayette Parish, Louisiana; and Premience, a citizen of Texas and Delaware.

---

[2]    A copy of Premience's Petition for Breach of Contract, Breach of Express and Implied Warranties, and Negligence and First Amended and Restated Petition for Breach of Contract, Breach of Express and Implied Warranties, and Negligence are attached hereto together as Exhibit "A."

6.      The amount in controversy exceeds $75,000.

7.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1332 and 2201.

8.      ETMT, Mt. Hawley, and Premience are subject to the personal jurisdiction of this Court.

9.      Venue is proper in the Lafayette Division of the Western District of Louisiana, where Defendant ETMT resides.[3]

## NATURE OF THE CLAIM

10.     Scottsdale seeks a declaration that Policy No. ENS0002756 ("Scottsdale Primary Policy") and Commercial Excess Liability Policy No. XNS0002775 ("Scottsdale Excess Policy") (together, "Scottsdale Policies"), issued by Scottsdale to ETMT for the period January 18, 2018 to January 18, 2019, provide coverage only for any *non-professional liability* asserted or assessed in the Underlying Lawsuit.[4]  Scottsdale further seeks a declaratory judgment that Policy No. NRG0000429 ("Mt. Hawley Primary Policy") and Excess Liability Policy No. NRX0000457 ("Mt. Hawley Excess Policy") (together, "Mt. Hawley Policies"), issued by Mt. Hawley to ETMT for the period January 18, 2020 to January 18, 2021, provide coverage for any *professional liability* asserted or assessed in the Underlying Lawsuit.[5]

11.     Scottsdale seeks a declaratory judgment apportioning the specific amount of indemnity, judicial interest, and bond expenses and premiums owed under the respective

---

[3]    *See* 28 U.S.C. § 1391(b).

[4]    A copy of the Scottsdale Primary Policy is attached hereto as Exhibit "B;" a copy of the Scottsdale Excess Policy is attached hereto as Exhibit "C."

[5]    A copy of the Mt. Hawley Primary Policy is attached hereto as Exhibit "D;" a copy of the Mt. Hawley Excess Policy is attached hereto as Exhibit "E."

Scottsdale Policies and Mt. Hawley Policies for the jury's verdict issued in the Underlying Lawsuit based on the trial record of the Underlying Lawsuit.

12.    Scottsdale seeks a declaration that the Mt. Hawley Primary Policy is *not* excess to the Scottsdale Primary Policy and, instead, that both policies provide primary coverage, albeit for differing risks and liabilities (i.e., non-professional commercial general liability risks versus professional risks).

13.    Scottsdale seeks a declaratory judgment that Mt. Hawley must reimburse Scottsdale for one-half of all fees and costs that Scottsdale has incurred or will incur for the defense of ETMT in the Underlying Lawsuit, including all appeals, on the basis that the Mt. Hawley Primary Policy and Scottsdale Primary Policy provide co-primary coverage under which each carrier owes an independent defense obligation to ETMT with respect to the claims in the Underlying Lawsuit.

14.    Scottsdale seeks a declaration of Premience's rights of recovery, if any, under the Scottsdale Policies and Mt. Hawley Policies considering the jury's verdict issued in the Underlying Lawsuit.

## FACTUAL BACKGROUND

### The Underlying Lawsuit

15.    Plaintiff, Premience Energy, LLC ("Premience" or "Plaintiff"), filed the Underlying Lawsuit against Dufrene on February 11, 2019, seeking damages arising from its use of allegedly incorrect casing pipe during the drilling of the completion zone of JV Miller No. 2 Well, Serial No. 251179 (the "Well"), in Jefferson Davis Parish, Louisiana.[6]

---

[6]    *See generally* Ex. A, Premience's Pet.

16.     In its First Amended and Restated Petition for Breach of Contract, Breach of Express and Implied Warranties, and Negligence ("First Amended Petition"), Premience named Dufrene Pipe Company, Inc. ("Dufrene"); IOS/PCI, LLC ("IOS"); and ETMT as defendants.[7]

17.     Premience alleges that in August 2018, it entered into an agreement with Dufrene under which Dufrene agreed to supply approximately 9,700 feet of N-80 grade casing pipe with specifications necessary to withstand the high formation pressure of the Well's completion zone.[8]

18.     Premience claims that Dufrene represented that the casing would be reconditioned and undergo hydrostatic testing, drift testing, and electromagnetic inspections in compliance with applicable American Petroleum Institute specifications.[9]

19.     Premience alleges that Dufrene "retained ETMT to inspect the threads on the casing, re-thread the casing where appropriate, perform hydrostatic testing, conduct a full-length drift on each joint of casing and to inspect the wall of the casing for acceptable thickness and appropriate grade."[10]

20.     Premience contends that ETMT failed to provide professional services by properly grading and inspecting the wall of more than thirty joints of the casing before delivering the casing to IOS for further inspection, grading, color-coding, and banding pursuant to Dufrene's instructions.[11]

---

[7]     *See* Ex. A, Premience's First Am. Pet., ¶2.

[8]     *See* Ex. A, Premience's First Am. Pet., ¶¶5-6, 8.

[9]     *See* Ex. A, Premience's First Am. Pet., ¶7.

[10]    *See* Ex. A, Premience's First Am. Pet., ¶ 11.

[11]    *See* Ex. A, Premience's First Am. Pet., ¶¶12-13.

21.    Premience claims that after IOS completed its services, the casing was delivered to Dufrene's pipe yard for sale or rental to exploration companies, including Premience.[12]

22.    Premience alleges that on or about September 26, 2018, it began to run the casing supplied by Dufrene, and inspected and tested by ETMT and IOS, into the Well's completion zone, but the casing string stopped moving downhole, and the casing parted when the rig attempted to pick up the casing string.[13]

23.    Premience claims that the parted casing caused Well operations to stop, and a third party's ultrasonic testing on the casing string identified thirty-four joints of casing with collapse pressure strength below the N-80 grade that Dufrene agreed to provide.[14]

24.    Premience seeks damages from Dufrene, IOS, and ETMT arising out of the use of allegedly deficient casing pipe, including money spent mitigating damage caused by the casing, third-party expenses, and additional costs to be incurred for future development of the Well.[15]

25.    Plaintiff asserts a negligence claim against ETMT, contending that ETMT breached its duty "to use reasonable care in the performance of the inspection and grading services it undertook or was expected to undertake" on the casing pipe supplied by Dufrene to Premience.[16]

26.    Specifically, Plaintiff claims that ETMT breached its duty to Premience by negligently inspecting the casing pipe; negligently testing the casing pipe; negligently delivering "the casing pipe to IOS for ultimate delivery to Dufrene, in that [ETMT] intermixed different grades of casing pipe together and did not inform IOS or Premience of the situation;" and

---

[12]    *See* Ex. A, Premience's First Am. Pet., ¶16.

[13]    *See* Ex. A, Premience's First Am. Pet., ¶17.

[14]    *See* Ex. A, Premience's First Am. Pet., ¶¶18-19.

[15]    *See* Ex. A, Premience's First Am. Pet., ¶20.

[16]    *See* Ex. A, Premience's First Am. Pet., ¶35.

negligently representing "that the casing pipe had a higher quality, weight, and collapse pressure than it did."[17]

27.    In December 2020, Dufrene filed its Cross-Claims in the Underlying Lawsuit asserting breach of contract and negligence claims against ETMT and IOS for their alleged failure to properly inspect, test, and label the subject casing.[18]

28.    In its Cross-Claims, Dufrene seeks "all sums that may be alleged against Dufrene by [Premience], plus costs and attorney's fees."[19]

29.    ETMT reported the claim to Scottsdale on April 14, 2020.  In a May 21, 2020 letter to ETMT, Scottsdale acknowledged receipt of the lawsuit and agreed to defend ETMT against the claims in the Underlying Lawsuit under the Scottsdale Primary Policy's Commercial General Liability coverage part, subject to a reservation of rights.[20] In the same letter, Scottsdale denied coverage under the Professional Liability coverage part given that the claim was not first made and reported during the policy period.[21]

30.    In a letter dated June 4, 2020, Mt. Hawley acknowledged receipt of the claim and denied coverage under the Mt. Hawley Primary Policy's Commercial General Liability coverage part because the events at issue occurred before the inception of the Mt. Hawley Policy.[22]  In addition, Mt. Hawley reserved rights under the Mt. Hawley Primary Policy's Professional Liability

---

[17]  *See* Ex. A, Premience's First Am. Pet., ¶36.

[18]  *See generally* Dufrene's Cross-Claims, a copy of which is attached hereto as Exhibit "F."

[19]  *See* Ex. F, Dufrene's Cross-Claims, at p. 7.

[20]  *See* May 21, 2020 letter from Nationwide to ETMT, a copy of which is attached hereto as Exhibit "G."

[21]  *See* Ex. G, May 21, 2020 letter from Nationwide to ETMT, at pp. 17-22.

[22]  *See* June 4, 2020 letter from Mt. Hawley to ETMT, at pp. 1-3, a copy of which is attached hereto as Exhibit "H."

coverage part, but took the incorrect position that its coverage is excess over the Scottsdale Primary Policy's coverage based on inapplicable Other Insurance provisions.[23]

31.    By letter dated February 2, 2023, Scottsdale, through undersigned counsel, explained to Mt. Hawley why its excess coverage position is incorrect and demanded that Mt. Hawley (1) acknowledge its primary obligations under the Mt. Hawley Primary Policy's Professional Liability coverage part and (2) agree to participate in the defense of ETMT on a co-primary basis and pay one-half of defense costs incurred by Scottsdale to date in defending ETMT in the Underlying Lawsuit.[24]

32.    On February 7, 2023, Mt. Hawley's counsel issued a response letter to Scottsdale's February 2, 2023 correspondence, yet again taking the incorrect position that it provides excess coverage and continuing to evade its independent defense obligations under the Mt. Hawley Primary Policy.[25]

33.    The trial of the Underlying Lawsuit began on February 13, 2023, and concluded on February 17, 2023. The jury found ETMT 100% liable and awarded $3,755,956.23 in damages.

34.    ETMT plans to appeal the verdict issued in the Underlying Lawsuit and pay bond premiums associated with the appeals.

---

[23]  *See* Ex. H, June 4, 2020 letter from Mt. Hawley to ETMT, at pp. 4-6.

[24]  *See* February 2, 2023 letter from Jay Sever to Mt. Hawley, a copy of which is attached hereto as Exhibit "I."

[25]  *See* February 7, 2023 letter from Alan D. Ezkovich to Jay Sever, a copy of which is attached hereto as Exhibit "J."

**The Scottsdale Policies**

35.    The Scottsdale Primary Policy, issued for the policy period January 18, 2018 to January 18, 2019, affords coverage to Named Insureds thereunder, including ETMT, subject to certain terms, conditions, limitations, and exclusions.[26]

36.    The Scottsdale Primary Policy includes Commercial General Liability – Occurrence and Professional Liability – Claims Made coverage parts.[27]

37.    The Scottsdale Primary Policy provides a $1,000,000 Each Occurrence General Liability limit of liability subject to a $5,000 Per Occurrence deductible and a $1,000,000 Each Claim Professional Liability limit of liability subject to a $10,000 Per Occurrence deductible.[28]

38.    The Scottsdale Primary Policy's Commercial General Liability and Professional Liability coverage parts state that "[t]hroughout this policy the words 'you' and 'your' refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this Policy" and "[t]he word 'insured' means any person or organization qualifying as such under Section II – Who Is An Insured."[29]

39.    The Insuring Agreement of the Scottsdale Primary Policy's Commercial General Liability coverage part states, in relevant part:

> **a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of … "property damage" to which this insurance applies.  We will have the right and duty to defend the insured against any "suit" seeking those damages.

---

[26]   *See generally* Ex. B, Scottsdale Primary Policy.

[27]   *See* Ex. B, Scottsdale Primary Policy, at Form ENS-D-1 (5-15) Policy Declarations, Page 2 of 2.

[28]   *See* Ex. B, Scottsdale Primary Policy, at Form ENS-D-1 (5-15) Policy Declarations, Page 2 of 2; Form ENS-6 (6-15) Liability Deductible Endorsement, Page 1 of 2.

[29]   *See* Ex. B, Scottsdale Primary Policy, at Form CG 00 01 04 13 Commercial General Liability Coverage Form, Page 1 of 16; ENS-P-2 (6-17) Professional Liability Coverage Form, Page 1 of 15.

\* \* \*

    **b.** This insurance applies to … "property damage" only if:

        **(1)** The … "property damage" is caused by an "occurrence" …;

        **(2)** The … "property damage" occurs during the policy period.[30]

40.    The Scottsdale Primary Policy's Commercial General Liability coverage part is subject to the Exclusion – Engineers, Architects or Surveyors Professional Liability Endorsement which provides that "[t]his insurance does not apply to … 'property damage' … arising out of the rendering of or failure to render any professional services by you or any engineer, architect or surveyor who is either employed by you or performing work on your behalf in such capacity." The Endorsement states that "[p]rofessional services include: 1. [t]he preparing, approving or failing to prepare or approve maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; and 2. [s]upervisory, inspection, architectural or engineer activities."[31]

41.    The Scottsdale Primary Policy's Commercial General Liability coverage part defines "occurrence" to mean "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." "Property damage" means:

    **a.** Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

---

[30] *See* Ex. B, Scottsdale Primary Policy, at Form CG 00 01 04 13 Commercial General Liability Coverage Form, Page 1 of 16.

[31] *See* Ex. B, Scottsdale Primary Policy, at Form CG 22 43 04 13 Exclusion – Engineers, Architects Or Surveyors Professional Liability Endorsement, Page 1 of 1.

      **b.** Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.[32]

42.    The Supplementary Payments provision of the Scottsdale Primary Policy provides,

in relevant part:

> We will pay, with respect to any claim we investigate or settle, or any "suit" against an "insured" we defend:
>
>              * * *
>
> **c.** All court costs taxed against the "insured" in the "suit." However, these payments do not include attorneys' fees or attorneys' expenses taxed against the "insured."
>
> **d.** Prejudgment interest awarded against the insured on that part of the judgment we pay…
>
> **e.** All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable Limit of Insurance.
>
> **f.** The cost of bonds to release attachments for bond amounts up to the applicable Limit of Insurance. [33]

43.    The Scottsdale Primary Policy includes the following Other Insurance provision in

its Commercial General Liability coverage part:

> If other valid and collectible insurance is available to the insured for a loss we cover under Coverages **A** or **B** of this Coverage Part, our obligations are limited as follows:
>
> **a.** **Primary Insurance**
>
> This insurance is primary except when Paragraph **b.** below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then

---

[32] *See* Ex. B, Scottsdale Primary Policy, at Form CG 00 01 04 13 Commercial General Liability Coverage Form, Page 15 of 16.

[33] *See* Ex. B, Scottsdale Primary Policy, at Form CG 00 01 04 13 Commercial General Liability Coverage Form, Page 8 of 16.

we will share with all that other insurance by the method described in Paragraph **c.** below.

**b.   Excess Insurance**

**(1)** This insurance is excess over:

**(a)** Any of the other insurance, whether primary, excess, contingent or on any other basis:

**(i)** That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for 'your work';

**(ii)** That is Fire Insurance for premises rented to you or temporarily occupied by you with permission of the owner;

**(iii)** That is insurance purchased by you to cover your liability as a tenant for 'property damage' to premises rented to you or temporarily occupied by you with permission of the owner; or

**(iv)** If the loss arises out of the maintenance or use of aircraft, 'autos' or watercraft to the extent not subject to Exclusion **g.** of Section **I** – Coverage **A** – Bodily Injury and Property Damage Liability.

**(b)** Any other primary insurance available to you covering liability for damages arising out of the premises or operations, or the products and completed operations for which you have been added as an additional insured.

\* \* \*

**c.   Method Of Sharing**

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit

of insurance to the total applicable limits of insurance of all insurers.[34]

44.     The Insuring Agreement of the Scottsdale Primary Policy's Professional Liability coverage part states, in relevant part:

> **a.** We will pay those sums that the "insured" becomes legally obligated to pay as "damages" resulting from a "wrongful act" for any "claim" first made during the "policy period." We will have the right and duty to defend the "insured" against any "suit" seeking those "damages." However, we will have no duty to defend the "insured" against any "suit" seeking "damages" to which this insurance does not apply.
>
> * * *
>
> **b.** This insurance applies to a "wrongful act," only if:
>
> * * *
>
> **(2)** The "wrongful act" must commence on or after the Retroactive Date, if any, shown in the Declarations, and prior to the end of the "policy period";
>
> **(3)** A "claim" against any "insured" for "damages" because of the "wrongful act" is first made against any "insured" during the "policy period" or any Extended Reporting Period we provide under **SECTION V—EXTENDED REPORTING PERIODS,** in accordance with paragraph **e.** below.
>
> * * *
>
> **d.** Such "claim," after being received by any "insured," is reported to us in accordance with the provisions of **SECTION IV—CONDITIONS, 2.** Duties In The Event Of A Claim Or Suit.[35]

45.     Section V—Extended Reporting Periods of the Scottsdale Primary Policy's Professional Liability coverage part provides:

---

[34]   *See* Ex. B, Scottsdale Primary Policy, at Form CG 00 01 04 13 Commercial General Liability Coverage Form, Page 12 of 16.

[35]   *See* Ex. B, Scottsdale Primary Policy, at Form ENS-P-2 (6-17) Professional Liability Coverage Form, Pages 1-2 of 15.

1. If this policy is canceled or non-renewed by either the Company or the Named Insured for any reason, except for nonpayment of premiums or deductibles, the following shall apply:

    (a) Upon termination or expiration of the policy the Company will provide the "insured" an automatic three month extension period for any "claim" first made against the "insured" and reported in writing to the Company, but only in respect to a "claim" for a "wrongful act" that take place on or after the retroactive date as shown in the Declarations and before the date of such cancellation or expiration. This automatic extended reporting period shall become effective the termination date of the policy.

    (b) This automatic extended reporting period does not reinstate, increase or in any way create any new Limits of Insurance, nor does it extend the "policy period."

    (c) The automatic extended reporting period is provided without an additional charge. The Automatic Extended Reporting Period allows the Named Insured to report any "claim" first made against the "insured" during the three month extension period immediately following the cancellation or non-renewal but only with respect to a "claim" for a "wrongful act" that take place on or after the Retroactive Date, provided that the "claim" is reported to us as soon as practicable but in any event no later than thirty (30) days after the expiration of the automatic extended reporting period.[36]

    46.    The Scottsdale Primary Policy's Professional Liability coverage part defines "claim" to mean "[a] written demand RECEIVED BY THE INSURED for monetary 'damages'; … [a] civil proceeding commenced by the service of a complaint or similar pleading … against any 'insured' for any 'wrongful act.'" "'Damages' means any amount that you are legally required to pay in the form of a judgment, award or settlement." "'Professional services' means those functions performed for third parties and for a fee by you or on your behalf that are related to your practice as a consultant, engineer, architect, surveyor, laboratory or construction manager." "'Suit'

---

[36] *See* Ex. B, Scottsdale Primary Policy, at Form ENS-P-2 (6-17) Professional Liability Coverage Form, 10-11 of 15.

means a civil proceeding in which 'damages' because of 'bodily injury' or 'property damage' to which this insurance applies are alleged." "'Wrongful act' means any actual or alleged act, error or omission committed or allegedly committed by an 'insured' which arises out of the rendering of or failure to render 'professional services' and which resulted in actual or alleged 'damages.'"[37]

47.     The Scottsdale Primary Policy's Professional Liability coverage part contains a Limitation Of Coverage To Designated Professional Services Endorsement, which states "[t]his insurance only applies to any 'claim' that results from the rendering of or failure to render Professional Services shown in the Schedule." The Schedule included in this Endorsement provides:

> Description of Professional Services:
>
> Non-destructive and ultrasonic testing services for a third party for a fee.[38]

48.     The Other Insurance provision of the Professional Liability coverage part of the Scottsdale Primary Policy states:

> If other valid and collectible insurance is available to the 'insured' for a loss we cover under Any Coverage Part, our obligations are limited as follows:
>
> **a.**   Primary Insurance
>
> This insurance is primary except when paragraph **b.** below applies. When this insurance is primary, our obligations are not affected unless any of the other is also primary. Then, we will share with all that other insurance by the method described in paragraph **c.** below.
>
> **b.**   Excess Insurance

---

[37]   *See* Ex. B, Scottsdale Primary Policy, at Form ENS-P-2 (6-17) Professional Liability Coverage Form, Pages 12-15 of 15.

[38]   *See* Scottsdale Primary Policy, at Form ENS-26 (5-15) Limitation Of Coverage To Designated Professional Services Endorsement, Page 1 of 1.

This Insurance is excess over any of the other insurance, whether primary, excess, contingent or on any other basis:

**(1)** That is effective prior to the beginning of the 'policy period' shown in the Declarations of this insurance and applies to a 'wrongful act' or any acts, errors or omissions other than a claims made basis, if:

    **(a)** No retroactive date is shown in the Declarations of this insurance; or

    **(b)** The limits of insurance apply to a 'policy period' which continues after the Retroactive Date shown in the Declarations of this insurance.

**(2)** Any valid and collectible insurance available to you covering liability for 'damages' arising out of your premises, operations, products and/or completed operations;

**(3)** Any valid and collectible insurance available to you covering liability for 'damages' arising out of your premises, operations, products and/or completed operations for which you have been added as an additional insured by endorsement, by definition in a contract or agreement, or by combination thereof;

**(4)** Any loss that arises out of the maintenance or use of aircraft, 'auto' or watercraft to the extent not subject to Exclusion **g.** of the Professional Liability Coverage Part; or

**(5)** Any valid and collectible insurance available to you covering liability for 'damages' for which you have been added as an additional insured by an endorsement, by definition in a contract or agreement, or by a combination thereof.

\* \* \*

**c.** Method Of Sharing

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method,

each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.[39]

49.     The Scottsdale Excess Policy, issued for the policy period January 18, 2018 to January 18, 2019, affords coverage to Named Insureds thereunder, including ETMT, subject to certain terms, conditions, limitations, and exclusions.[40]

50.     The Scottsdale Excess Policy provides $5,000,000 Each Occurrence limit of liability.[41]

51.     The Scottsdale Excess Policy's Commercial Excess Liability Coverage Form states:

> The insurance provided under this Coverage Part will follow the same provisions, exclusions and limitations that are contained in the applicable "controlling underlying insurance"[42], unless otherwise directed by this insurance. To the extent such provisions differ or conflict, the provisions of this Coverage Part will apply. However, the coverage provided under this Coverage Part will not be broader than provided by the applicable "controlling underlying insurance."[43]

---

[39]   *See* Ex. B, Scottsdale Primary Policy, at Form CG 00 01 04 13 Commercial General Liability Coverage Form, Page 12 of 16.

[40]   *See generally* Ex. C, Scottsdale Excess Policy.

[41]   *See* Ex. C, Scottsdale Excess Policy, at Form XLS-D-1 (11-08) Policy Declarations.

[42]   Under the Scottsdale Excess Policy "'[c]ontrolling underlying insurance' means any policy of insurance or self-insurance listed in the Declarations under the Schedule of 'controlling underlying insurance'." *See* Ex. C, Scottsdale Excess Policy, at Form CX 00 01 04 13 Commercial Excess Liability Coverage Form, Page 5 of 5. The Schedule Of Controlling Underlying Insurance lists the Primary Policy. *See* Ex. C, Scottsdale Excess Policy, at Form XLS-SP-2 (11-08).

[43]   *See* Ex. C, Scottsdale Excess Policy, at Form CX 00 01 04 13 Commercial Excess Liability Coverage Form, Page 1 of 5.

52. The Insuring Agreement of the Scottsdale Excess Policy provides, in relevant part:

    **a.** We will pay on behalf of the insured the "ultimate net loss" in excess of the "retained limit" because of "injury or damage" to which insurance provided under this Coverage Part applies.[44]

                * * *

    **c.** If the "controlling underlying insurance" requires, for a particular claim, that the "injury or damage" occur during its policy period in order for that coverage to apply, then this insurance will only apply to that "injury or damage" if it occurs during the policy period of this Coverage Part. If the "controlling underlying insurance" requires that the "event" causing the particular "injury or damage" takes place during its policy period in order for that coverage to apply, then this insurance will apply to the claim only if the "event" causing that "injury or damage" takes place during the policy period of this Coverage Part.[45]

53. The Scottsdale Excess Policy defines "injury or damage" to mean "any injury or damage, covered in the applicable 'controlling underlying insurance' arising from an 'event'," and "'event' means an occurrence, offense, accident, act, or other event, to which the applicable 'controlling underlying insurance' applies." "'Retained limit' means the available limits of 'controlling underlying insurance' applicable to the claim." The Scottsdale Excess Policy defines "ultimate net loss" to mean "the total sum, after reduction for recoveries, or salvages collectible, that the insured becomes legally obligated to pay as damages by reason of … judgments."[46]

54. The Other Insurance provision of the Scottsdale Excess Policy states:

    **a.** This insurance is excess over, and shall not contribute with any of the other insurance, whether primary, excess, contingent or

---

[44] *See* Ex. C, Scottsdale Excess Policy, at Form CX 00 01 04 13 Commercial Excess Liability Coverage Form, Page 1 of 5; Form CX 01 01 03 12 Louisiana Changes Endorsement, Page 1 of 3.

[45] *See* Ex. C, Scottsdale Excess Policy, at Form CX 00 01 04 13 Commercial Excess Liability Coverage Form, Page 1-2 of 5.

[46] *See* Ex. C, Scottsdale Excess Policy, at Form CX 00 01 04 13 Commercial Excess Liability Coverage Form, Page 1 of 5.

on any other basis. This condition will not apply to insurance specifically written as excess over this Coverage Part.

\* \* \*

**b.** When this insurance is excess over other insurance, we will pay only our share of the "ultimate net loss" that exceeds the sum of:

**(1)** The total amount that all such other insurance would pay for the loss in the absence of the insurance provided under this Coverage Part; and

**(2)** The total of all deductible and self-insured amounts under all that other insurance.[47]

**The Mt. Hawley Policies**

55.     The Mt. Hawley Primary Policy, issued for the policy period January 18, 2020 to January 18, 2021, provides coverage to Named Insureds thereunder, including ETMT, subject to certain terms, conditions, limitations, and exclusions.[48]

56.     The Mt. Hawley Primary Policy includes Commercial General Liability – Occurrence and Professional Liability – Claims Made coverage parts.[49]

57.     The Mt. Hawley Primary Policy provides an $1,000,000 Each Occurrence General Liability limit of liability subject to a $5,000 Per Occurrence deductible and an $1,000,000 Each Claim Professional Liability limit subject to a $5,000 Each Claim deductible.[50]

---

[47]   *See* Ex. C, Scottsdale Excess Policy, at Form CX 00 01 04 13 Commercial Excess Liability Coverage Form, Page 4 of 5.

[48]   *See generally* Ex. D, Mt. Hawley Primary Policy.

[49]   *See* Ex. D, Mt. Hawley Primary Policy, at Form NCP 100 (02/16) Common Policy Declarations, Page 1 of 1.

[50]   *See* Ex. D, Mt. Hawley Primary Policy, at Form NGO 100 (02/16) Commercial General Liability Coverage Part Declarations, Page 1 of 1; Form NGL 317 (04/16) Deductible Liability Insurance – Including Medical Payments Endorsement, Page 1 of 2; Form NCP 100 (02/16) Professional Liability Coverage Part Declarations, Page 1 of 1.

58.    The Mt. Hawley Primary Policy's Commercial General Liability and Professional Liability coverage parts state that "[t]hroughout this policy the words 'you' and 'your' refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this Policy" and "[t]he word 'insured' means any person or organization qualifying as such under Section II – Who Is An Insured."[51]

59.    The Insuring Agreement of the Mt. Hawley Primary Policy's Commercial General Liability coverage part states, in relevant part:

> **a.**   We will pay those sums that the insured becomes legally obligated to pay as damages because of … "property damage" to which this insurance applies.  We will have the right and duty to defend the insured against any "suit" seeking those damages.
>
> *  *  *
>
> **b.**   This insurance applies to … "property damage" only if:
>
> **(1)** The … "property damage" is caused by an "occurrence" …;
>
> **(2)** The … "property damage" occurs during the policy period.[52]

60.    The Mt. Hawley Primary Policy's Commercial General Liability coverage part defines "occurrence" to mean "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." "Property damage" means:

> **a.**   Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

---

[51]    *See* Ex. D, Mt. Hawley Primary Policy, at Form CG 00 01 04 13 Commercial General Liability Coverage Form, Page 1 of 16; NCP 101 (03/19) Professional Liability Policy, Pages 1 of 16.

[52]    *See* Ex. D, Mt. Hawley Primary Policy, at Form CG 00 01 04 13 Commercial General Liability Coverage Form, Page 1 of 16.

    **b.** Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.[53]

61.    The Mt. Hawley Primary Policy includes the following Other Insurance provision

in its Commercial General Liability Part:

> If other valid and collectible insurance is available to the insured for a loss we cover under Coverages **A** or **B** of this Coverage Part, out obligations are limited as follows:
>
> **a. Primary Insurance**
>
> This insurance is primary except when Paragraph **b.** below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then we will shar with all that other insurance by the method described in Paragraph **c.** below.
>
> **b. Excess Insurance**
>
> **(1)** This insurance is excess over:
>
> **(a)** Any of the other insurance, whether primary, excess, contingent or on any other basis:
>
> **(i)**    That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for 'your work';
>
> **(ii)**    That is Fire Insurance for premises rented to you or temporarily occupied by you with permission of the owner;
>
> **(iii)**    That is insurance purchased by you to cover your liability as a tenant for 'property damage' to premises rented to your or temporarily occupied by you with permission of the owner; or
>
> **(iv)**    If the loss arises out of the maintenance or use of aircraft, 'autos' or watercraft to the extent not subject to Exclusion **g.** of Section **I** – Coverage

---

[53]  *See* Ex. D, Mt. Hawley Primary Policy, at Form CG 00 01 04 13 Commercial General Liability Coverage Form, Page 15 of 16.

> **A** – Bodily Injury and Property Damage Liability.
>
> **(b)** Any other primary insurance available to you covering liability for damages arising out of the premises or operations, or the products and completed operations for which you have been added as an additional insured.
>
> * * *
>
> **c.** Method Of Sharing
>
> If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.
>
> If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.[54]

62. The Insuring Agreement of the Mt. Hawley Primary Policy's Professional Liability coverage part states, in relevant part:

> **a.** We will pay those sums that the insured becomes legally obligated to pay as "damages" that result from an actual or alleged act, error or omission in the performance of "professional services" by the insured … to which this insurance applies.  We will have the right and duty to defend the insured against any "suit" seeking those "damages".
>
> * * *
>
> **b.** This insurance shall only apply if:
>
> **(1)** The "claim" is first made against the insured during the "policy period" and first reported to the insurer, in writing, during the "policy period", or Extended Reporting Period, if applicable;

---

[54] *See* Ex. D, Mt. Hawley Primary Policy, at Form CG 00 01 04 13 Commercial General Liability Coverage Form, Page 12 of 16.

\* \* \*

> **(3)** The actual or alleged act, error or omission takes place on or after the "retroactive date", shown in the Declarations and before the end of the "policy period".
>
> **c.** All "claims" for "damages" that result from or arise out of a single act, error or omission or a services of related acts, errors or omissions in the performance of "professional services" by the insured, will be deemed to have been made and reported at the time the first of those "claims" is made against any insured. All such "claims" for "damages" shall be subject to the limit of insurance stated in the Declarations of the Policy which applies to such earliest "claim".[55]

63.    The Mt. Hawley Primary Policy' Professional Liability coverage part defines "claim" to mean "a demand received by the insured for money or services that arises from an act, error or omission to which this insurance applies," and "includes but is not limited to 'suits', petitions, arbitrations or other alternative dispute resolution requests filed against the insured." "Damages" "means a monitory judgment, award or settlement of compensatory damages including 'damages' because of an actual or alleged act, error or omission in the performance of 'professional services.'" "Professional services" "means those services the Insured is legally qualified to perform for others for a fee in the practice of architecture, engineering or surveying" and "may also include those 'professional services' as limited or amended by an attached schedule." The Mt. Hawley Policy's Limitation Of Coverage To Designated Professional Services Endorsement modifies the Professional Liability Coverage Part to only apply to "'claims' or 'suits' that arise out of your 'professional services' of [non destructive testing of piping, metal parts and tools] by you or on your behalf." "Retroactive date" means "the date set forth in the Declarations [January 8, 2014] … and is the earliest date that a 'claim' can be made for coverage to be provided under

---

[55]    *See* Ex. D, Mt. Hawley Primary Policy, at Form NCP 101 (03/19) Professional Liability Policy, Pages 1-2 of 16.

this Policy." "Suit" means "a civil proceeding in which 'damages' that result from an act, error or omission in the performance of 'professional services' to which this insurance applies are alleged."[56]

64.    The Supplementary Payments provision of the Mt. Hawley Primary Policy provides, in relevant part:

> We will pay, with respect to any "claims" we investigate or settle, or any "claim" or "suit" against an "insured" we defend:
>
> * * *
>
> 2.    The cost of bonds to release attachments, but only for bond amounts up to the applicable Limit of Insurance.
>
> * * *
>
> 4.    All court costs taxed against the "insured" in the "claim" or "suit." However, these payments do not include attorneys' fees or attorneys' expenses taxed against the insured.
>
> 5.    Prejudgment interest awarded against the insured on that part of the judgment we pay.
>
> 6.    All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable Limit of Insurance.[57]

65.    The Other Insurance provision of the Professional Liability coverage part of the Mt. Hawley Primary Policy states:

> If other valid and collectible insurance is available to the insured for 'damages' we cover under this Policy other than a policy that is specifically written to apply in excess of this Policy, the insurance afforded by this Policy shall apply in excess of and shall not

---

[56]    *See* Ex. C, Mt. Hawley Primary Policy, at Form NCP 100 (02/16) Common Policy Declarations, Pages 13, 15 of 16; Form NCP 307 (04/16) Limitation Of Coverage To Designated Professional Services Endorsement, at Page 1 of 1.

[57]    *See* Ex. D, Mt. Hawley Primary Policy, at Form NCP 101 (03/19) Professional Liability Policy, Page 8-9 of 16.

contribute with such other policy. This Policy shall be excess of any deductible or self-insured retention under such other insurance.[58]

66.    The Mt. Hawley Excess Policy, issued for the policy period January 18, 2020, to January 18, 2021, affords coverage to Named Insureds thereunder, including ETMT, subject to certain terms, conditions, limitations, and exclusions.[59]

67.    The Mt. Hawley Excess Policy provides a $5,000,000 Each Occurrence limit.[60]

68.    The Insuring Agreement of the Mt. Hawley Excess Policy's Commercial Excess Liability Policy (Occurrence Form) provides:

> Subject to the other provisions of this policy, we will pay on behalf of the insured the insured's **ultimate net loss** if such loss results from an occurrence insured by **underlying insurance**. However, the insurance afforded by this policy shall apply: (a) only in excess of the **underlying insurance**; and (b) only after the **underlying insurance** has been exhausted by payment of the limits of liability of such insurance; and (c) only if caused by an occurrence which takes place during the policy period…
>
> This policy, except where provisions to the contrary appear herein, is subject to all of the conditions, agreements, exclusion, definitions and limitations of and shall follow the **underlying insurance** in all respects.[61]

69.    The Mt. Hawley Excess Policy's Amendment For Underlying Claims-Made Coverage provides, in relevant part:

> **A.** If the **underlying insurance** affords coverage on a claims-made or claims-made and reported basis, then this insurance will apply on a claims-made and reported basis. This insurance shall follow

---

[58]    *See* Ex. D, Mt. Hawley Primary Policy, at Form NCP 101 (03/19) Professional Liability Policy, Page 11 of 16.

[59]    *See generally* Ex. E, Mt. Hawley Excess Policy.

[60]    *See* Ex. E, Mt. Hawley Excess Policy, at Form EMXL 131 (04/16) Excess Liability Policy Declarations, Page 1 of 1.

[61]    *See* Ex. E, Mt. Hawley Excess Policy, at Form MXL 131 (05/15) Commercial Excess liability Policy (Occurrence Form), Page 1 of 7.

the claims-made provisions of the **underlying insurance**, subject to the following conditions precedent to coverage:

**1.** This insurance applies only if a claim is first made and reported in writing to the Company during the policy period; and

**2.** This insurance does not apply to any occurrence or event which commences prior to the retroactive date or after the end of the policy period.

**B.** If the **underlying insurance** affords coverage on an occurrence basis, then this insurance will apply on an occurrence basis.[62]

70.    The Mt. Hawley Excess Policy defines "underlying insurance" to mean "the policy or policies of insurance in the Schedule of Underlying Insurance."[63] The Schedule Of Controlling Underlying Insurance lists the Mt. Hawley Primary Policy.[64] *See* Ex. C, Scottsdale Excess Policy, at Form XLS-SP-2 (11-08).

71.    The Mt. Hawley Excess Policy's Defense And Expense Of Claims And Suits provision states, in part:

**1.** We shall not pay any expenses except as follows:

**a.** If the insured is legally liable for interest which accrues on a judgment after the entry of the judgment and before we have paid, offered to pay, or deposited in court the amount of the judgment to which this policy applies, then we will pay the interest on the amount of the judgment to which this policy applies.

**b.** If a payment for damages is made under this policy, then we will pay related pre-judgment interest for which the insured is legally liable; provided:

---

[62]    *See* Ex. E, Mt. Hawley Excess Policy, at Form CEE 519 (05/19) Amendment For Underlying Claims-Made Coverage, Page 1 of 2.

[63]    *See* Ex. E, Mt. Hawley Excess Policy, at Form MXL 131 (05/15) Commercial Excess liability Policy (Occurrence Form), Page 2 of 7.

[64]    *See* Ex. E, Mt. Hawley Excess Policy, at Form CEE 319 (03/06) Schedule Of Underlying Insurance.

      **(1)** The **underlying insurance** pays pre-judgment interest; and

      **(2)** Our share of prejudgment interest shall not exceed the proportion that payment for damages under this policy bears to the total damages determined by final judgment or settlement.[65]

72.    The Other Insurance provision of the Mt. Hawley Excess Policy states:

    **K.** If other insurance, whether collectible or not, is available to the insured covering a loss also covered by this policy, other than insurance that is specifically excess of the insurance afforded by this policy, the insurance afforded by this policy shall be in excess of, and shall not contribute with, such other insurance.[66]

### COUNT I – DECLARATORY RELIEF

**The Scottsdale Policies are Limited to *Non-Professional* CGL Coverage and the Mt. Hawley Policies are Limited to *Professional* Coverage**

73.    Scottsdale adopts and incorporates by reference the allegations set forth in the preceding paragraphs above as though completely and fully set forth herein.

74.    An actual, present, and existing controversy exists among the parties to this lawsuit regarding the coverage afforded under the Scottsdale Policies and Mt. Hawley Policies for the liability assessed in the Underlying Lawsuit.

75.    The liability assessed in the Underlying Lawsuit may only trigger the Scottsdale Policies to the extent the record establishes that ETMT is liable for covered damages due to "property damage" that occurred during the policy period.

76.    The liability alleged and assessed against ETMT in the Underlying Lawsuit arising from its failure to render professional services related to inspecting and testing the subject casing

---

[65] *See* Ex. E, Mt. Hawley Excess Policy, at Form MXL 131 (05/15) Commercial Excess liability Policy (Occurrence Form), Page 1 of 7.

[66] *See* Ex. E, Mt. Hawley Excess Policy, at Form MXL 131 (05/15) Commercial Excess liability Policy (Occurrence Form), Page 6-7 of 7.

pipe are barred under the Scottsdale Primary Policy's Commercial General Liability coverage part pursuant to the Exclusion – Engineers, Architects or Surveyors Professional Liability Endorsement, precludes coverage for "'property damage' … arising out of the rendering of or failure to render any professional services," specifically including inspection services.

77.     The Scottsdale Primary Policy's Professional Liability coverage part does not provide coverage for ETMT's professional liability in the Underlying Lawsuit. This claim was first made against ETMT when the First Amended Petition was filed on March 31, 2020, and the matter was reported to Scottsdale on April 14, 2020. These dates are both after the policy period and, therefore, the claims made and reporting requirements of the Scottsdale Primary Policy's Professional Liability coverage part cannot be satisfied.

78.     Thus, the Scottsdale Policies may only provide coverage for the judgment, judicial interest, and bond expenses in the Underlying Lawsuit to the extent the liability assessed against ETMT is not related to ETMT's professional services.

79.     As Mt. Hawley has acknowledged, the Mt. Hawley Primary Policy's Professional Liability coverage part provides coverage for liability alleged and assessed against ETMT in the Underlying Lawsuit involving professional liability for a claim that was made and reported during the Mt. Hawley Policies' policy period for "damages" resulting from alleged error in the performance of "professional services" taking place after the January 8, 2014 "retroactive date." The Mt. Hawley Excess Policy provides coverage for liability assessed for professional liability in excess of the Mt. Hawley Primary Policy's $1,000,000 per claim limit of liability.

80.     Thus, the Mt. Hawley Policies provide coverage for the judgment, judicial interest, and bond expenses in the Underlying Lawsuit to the extent the liability assessed against ETMT involves professional liability.

## COUNT II – DECLARATORY RELIEF

**Mt. Hawley's Professional Coverage is Not Excess to Scottsdale's CGL Coverage**

81.     Scottsdale adopts and incorporates by reference the allegations set forth in the preceding paragraphs above as though completely and fully set forth herein.

82.     As established above, the Scottsdale Policies and the Mt. Hawley Policies provide wholly separate coverage under separate coverage parts for the alleged liability and damages in the Underlying Lawsuit.

83.     Because the Scottsdale Policies and Mt. Hawley Policies do not provide insurance coverage for the same risk, one policy cannot be excess of the other.

84.     Inasmuch as Other Insurance provisions only apply to overlapping risks, the Policies' Other Insurance provisions are not implicated.

85.     If for some reason, this Court were to find that the Other Insurance provisions were relevant, the Other Insurance provisions would be deemed to be "mutually repugnant" such that the Policies apply on a pro rata basis.

## COUNT III – DECLARATORY AND CONTRIBUTORY RELIEF

**Mt. Hawley Owes Scottsdale Half of All Fees and Costs that it Has Incurred and Will Incur for the Defense of ETMT in the Underlying Lawsuit, Including Appeals**

86.     Scottsdale adopts and incorporates by reference the allegations set forth in the preceding paragraphs above as through completely and fully set forth herein.

87.     Scottsdale has incurred all costs and fees associated with defending ETMT, even though the majority of claims in the Underlying Lawsuit arise from professional liability, which Mt. Hawley acknowledges are covered under the Mt. Hawley Primary Policy.

88.     Because the Mt. Hawley Primary Policy provides co-primary coverage under the Professional Liability coverage part, Mt. Hawley independently owes a defense obligation to ETMT with respect to the claims in the Underlying Lawsuit and related appeals.

89.     For these reasons, Mt. Hawley owes Scottsdale half of all fees and costs that it has incurred and will incur for the defense of ETMT in the Underlying Lawsuit and related appeals.

## COUNT IV – OTHER DECLARATORY RELIEF

90.     Scottsdale adopts and incorporates by reference the allegations set forth in the preceding paragraphs above as through completely and fully set forth herein.

91.     Scottsdale seeks a declaration of Premience's right of recovery, if any, under the Scottsdale Policies and Mt. Hawley Policies considering the jury's verdict and judgment issued in the Underlying Lawsuit.

92.     In addition to the foregoing provisions, Scottsdale pleads all other conditions, terms, warranties, limitations, definitions, and exclusions of the Scottsdale Policies, which also may be found to be applicable as Scottsdale's investigation of this matter continues, and reserves the right to amend its Complaint as additional and/or more specific information becomes available.

**WHEREFORE**, Scottsdale prays:

A.  That process be issued as required by law and the Defendants be served with copies of the Summons and Complaint for Declaratory Judgment;

B.  For a declaration by the Court declaring the rights and obligations of the parties under the Scottsdale Policies and Mt. Hawley Policies, including, but not limited to, a judgment that the Scottsdale Policies provide coverage only for any *non-professional liability* asserted or assessed in the Underlying Lawsuit and the Mt. Hawley Policies provide coverage for any *professional liability* asserted or assessed in the Underlying

Lawsuit; a judgment apportioning the specific amount of indemnity, judicial interest, and bond expenses owed under the Scottsdale Policies and Mt. Hawley Policies for the jury's verdict and the judgment issued based on the record in the Underlying lawsuit; a judgment that the Mt. Hawley Primary Policy is *not* excess to the Scottsdale Primary Policy and, instead, that both policies provide primary coverage; and a judgment that Mt. Hawley must reimburse Scottsdale for one-half of all fees and costs that Scottsdale has incurred and will incur for the defense of ETMT in the Underlying Lawsuit and related appeals;

C. For all costs and fees that Scottsdale has incurred or will incur for the bringing of this actions; and

D. For all such other and further relief as this Court deems just and proper.

Respectfully submitted, this 1st day of March, 2023.

**PHELPS DUNBAR LLP**

BY:    */s/ Tucker T. Bohren*
       Jay Russell Sever (Bar No. 23935)
       Tucker T. Bohren (Bar No. 37039)
       Canal Place | 365 Canal Street, Suite 2000
       New Orleans, Louisiana 70130-6534
       Telephone: 504-566-1311
       Telecopier: 504-568-9130
       Email: jay.sever@phelps.com
              tucker.bohren@phelps.com

**ATTORNEYS FOR PLAINTIFF, SCOTTSDALE INSURANCE COMPANY**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 1st day of March, 2023, I electronically filed the foregoing First Amended Complaint for Declaratory Judgment with the Clerk of Court by using the CM/ECF system, which will send a notice of electronic filing to all counsel registered for electronic service.


*/s/ Tucker T. Bohren*
Tucker T. Bohren (Bar No. 37039)